UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA                     :

   - v -                                              :

                                        08 CR 626 (JSR)

JOSE CASTILLO-SOLIS                           :

                                        **NOTICE OF MOTION**

     Defendant.                               :

-------------------------------------------------------X

     PLEASE TAKE NOTICE that upon the annexed declaration of Julia L. Gatto,

duly executed on the 25th day of August, the exhibits attached thereto, and the

accompanying Memorandum of Law, the undersigned will move this Court, before the

Honorable Jed S. Rakoff, in the Southern District of New York, at a date and time

convenient for the Court, for an Order dismissing the Indictment with prejudice and for

such other and further relief as this Court may deem just and proper.

Dated: August 25, 2008
       New York, New York

                              Respectfully submitted,

                              Federal Defenders of New York

       By:        _____

                              JULIA L. GATTO, ESQ.
                              Attorney for Defendant
                              **Jose Castillo-Solis**
                              52 Duane Street - 10th Floor
                              New York NY 10007
                              Tel.: (212) 417-8750

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA          :

   - v -          :

                                  08 CR 626 (JSR)

JOSE CASTILLO-SOLIS          :

                                  **AFFIRMATION**

    Defendant.          :

------------------------------------------------------X

           JULIA L. GATTO, under penalty of perjury pursuant to U.S.C. § 1746

does hereby declare the following to be true:

1.     I am an Assistant Federal Defender with the Federal Defenders of New York.  I

have been appointed by the Court to represent Jose Castillo-Solis in this action.  I make

this affirmation in support of his motion to dismiss the indictment with prejudice.

2.     On information and belief, based upon an interview with my client and my review

of the Indictment and other documents produced by the government during discovery, I

believe that Mr. Castillo-Solis was illegally deported in 2002 after a fundamentally unfair

proceeding that deprived him of administrative and judicial review in violation of the

Due Process.  Accordingly, the Indictment which charges Mr. Castillo-Solis with illegally

reentering the United States subsequent to deportation must be dismissed with prejudice.

3.     Specifically, I reviewed the following documents produced by the government

during discovery and which are attached hereto as Exhibits A through C, respectively:

(A) Decision of the Board of Immigration Appeals, dated April 5, 1999; (B) Motion to

Reconsider Late Filed Brief on Appeal Pursuant to New Found Evidence, dated

September 5, 1999; and (C) Decision of the Board Immigration Appeals, dated July 13,

2000.

4.    Based on all of the reasons set forth more fully in the Memorandum of Law, it is

respectfully submitted that Mr. Castillo-Solis' motion to dismiss the Indictment be

granted.

Dated: August 25, 2008
       New York, New York

                              Respectfully submitted,

                              Federal Defenders of New York

By:        _____
                              JULIA L. GATTO, ESQ.
                              Attorney for Defendant
                              **Jose Castillo-Solis**
                              52 Duane Street - 10th Floor
                              New York NY 10007
                              Tel.: (212) 417-8750

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   A40 481 863 - Fishkill

Date:   APR - 5 1999

In re:  JOSE CRESCENCIO CASTILLO-SOLIS

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Pro se

ORDER:

PER CURIAM.  The appeal is untimely.  A Notice of Appeal (Form EOIR-26) must be filed within 30 calendar days of an Immigration Judge's oral decision or the mailing of a written decision.  In the instant case, the Immigration Judge's oral decision was rendered on June 12, 1998.  The appeal was accordingly due on or before July 13, 1998.  The record reflects, however, that the Notice of Appeal was filed with the Board of Immigration Appeals on March 8, 1999.  We find that the appeal is untimely.  The Immigration Judge's decision is accordingly now final, and the record is returned to the Immigration Court without further action.  See 8 C.F.R. §§ 3.3(a), 3.38, 236.7, and 242.21 (1997).

_Anthony C. Moscato_
FOR THE BOARD

20

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | MOTION TO RECONSIDER LATE |
| CASTILLO-SOLIS, JOSE CRESCENCIO, | ) | FILED BRIEF ON APPEAL |
| | ) | PURSUANT TO NEW FOUND |
| Inmate No.  98-A-1724 | ) | EVIDENCE |
| | ) | |
| | ) | |
| Respondent. | ) | A: 40-481-863 |
| | ) | |

This is a motion to reconsoder late filed brief on appeal pursuant to new found evidence.  Respondent's crime for deportation was on or about February 7, 1994 (date of conviction), for the crime of attempted robbery in the 1°. The respondent will show that the United States Department of Justice is deporting [him] from a crime that occurred before the AEDPA §440(d) was established and at the time of conviction the INS did not attempt to deport respondent then, and shall not be allowed to deport respondent now.

PRELIMINARY STATEMENT

The respondent legally entered this Country on or about July 15, 1986 as a Lawful Permanent Resident.  He has his Grandmother, Habelina Soliz, his two (2) Aunts Lus and Marta Soliz, his Uncle, Lino Soliz, his Mother Mercedes Soliz, his Sister Rosa Marin and his lovely Daughter Samaria Castillo who are all United States Citizens.  On July 12, 1998, at the Immigration Court, Red Schoolhouse Road, Fishkill, NY 12524, the Hon. Mitchell A. Levinsky, Immigration Judge ordered the respondent removed to Honduras.  Resondent respectfully request that this Court, the BIA, review his Late Filed Brief and its argument.

See HENDERSON v. INS, 157 F.3d 106 (2nd Cir. 1998); GONCALVES v. RENO, 144 F.3d 110 (1st Cir. 1998).  In both cases The United States Attorney General, Ms. Janet Reno petition for writ of certiorari in RENO, et al., v. NAVAS, et al., No. 98-996 and RENO, et al v. GONCALVES, No. 98-835 (U.S. S.CT., 3/8/99, 64 Crl 2182,2183, and the United States Supreme Court denied certtiorari. Making both cases binding legal precedent respetively in their Circuits.  In a case of first impression, an Eastern District Federal Judge has ruled that a key deportation provision of the 1996 Antiterrorism and Effective Death Penalty Act is not retroactive.  United States District Judge Jack B. Weinstein ruled friday, July 30, 1999, that a criminal conviction obtained before April 1996, when the law took affect, cannot be used by the government to deny equitable hearing to waive deportation of a foreign national who is a longtime resident of te United States, POTTINGER v. RENO, 97 CV 3217, (Deportation Hearing Limits Not Retroactive, N.Y.L.J. pg. 1, col. 2 and conts. on pg.6, col 1 by Michael A. Riccardi.

### EX POST FACTO

Although challenges to retroactive deportation laws under the ex post facto clause have repeatedly been rejected in the past on the basis that the clause only applies to criminal punishment, the now often mandatory imposition of the "civil" penalty of removal upon conviction suggests that it may be worth preserving such a claim in the hope that the courts will revist the issue. See SCHEIDEMANN v. INS, 83 F.3d 1517, 1527 (3 Cir. 1996)(Sarokin, J., concurring) ("If deportation under such circumstances is not punishment, it is difficult to envision what is"); See also EASTERN ENTERPRISES v. APFEL, 524 U.S. 498 (1998) (concurring opinion of Justice Thomas)(expressing willingness to reconsider whether retroactive civil laws are unconstitutional under the ex post facto clause).

-3-

31

See HENDERSON v. INS, 157 F.3d 106 (2nd Cir. 1998); GONCALVES v. RENO, 144 F.3d 110 (1st Cir. 1998).  In both cases The United States Attorney General, Ms. Janet Reno petition for writ of certiorari in RENO, et al., v. NAVAS, et al., No. 98-996 and RENO, et al v. GONCALVES, No. 98-835 (U.S. S.CT., 3/8/99, 64 Crl 2182,2183, and the United States Supreme Court denied certtiorari. Making both cases binding legal precedent respetively in their Circuits.  In a case of first impression, an Eastern District Federal Judge has ruled that a key deportation provision of the 1996 Antiterrorism and Effective Death Penalty Act is not retroactive.  United States District Judge Jack B. Weinstein ruled friday, July 30, 1999, that a criminal conviction obtained before April 1996, when the law took affect, cannot be used by the government to deny equitable hearing to waive deportation of a foreign national who is a longtime resident of te United States, POTTINGER v. RENO, 97 CV 3217, (Deportation Hearing Limits Not Retroactive, N.Y.L.J. pg. 1, col. 2 and conts. on pg.6, col 1 by Michael A. Riccardi.

### EX POST FACTO

Although challenges to retroactive deportation laws under the ex post facto clause have repeatedly been rejected in the past on the basis that the clause only applies to criminal punishment, the now often mandatory imposition of the "civil" penalty of removal upon conviction suggests that it may be worth preserving such a claim in the hope that the courts will revist the issue. See SCHEIDEMANN v. INS, 83 F.3d 1517, 1527 (3 Cir. 1996)(Sarokin, J., concurring) ("If deportation under such circumstances is not punishment, it is difficult to envision what is"); See also EASTERN ENTERPRISES v. APFEL, 524 U.S. 498 (1998) (concurring opinion of Justice Thomas)(expressing willingness to reconsider whether retroactive civil laws are unconstitutional under the ex post facto clause).

-3-

32

Wherefore the respondent, Jose Castillo 98-A-1724, is requesting the BIA review his petition and allow him to file for a waiver of deportation, whether it is a 212(c), 212(h), or canecllation of removal so the respondent, who is a longtime resident be allowed to continue living in the United States and at some point apply for citizenship and to continue living with his family in the United States.

Respectfully Submitted,

Jose Castillo  98-A-1724
Petitioner, Pro Se
Bare Hill Correctional Facility
Caller Box 20, Cady Road
Malone, New York 12953

I, Jose Castillo duly affirm under the penalty of perjury pursuant to 28 U.S.C. § 1746, that the above is true and correct to the best of my knowledge and is seving opposing counsel, Ms. Mercedes Cesaratto, Assistant District Counsel.

Dated:   September 5, 1999
         Malone, New York

JOSE CASTILLO  98-A-1724

-4-

33

Falls Church, Virginia 22041

File: A40 481 863 - Fishkill                                    Date:    JUL 13 2000

In re:   JOSE CRESCENCIO CASTILLO-SOLIS

IN REMOVAL PROCEEDINGS

MOTION

ON BEHALF OF RESPONDENT:   Pro se


ORDER:

PER CURIAM.    On April 5, 1999, the Board dismissed for lack of jurisdiction the respondent's appeal from the decision of the Immigration Judge. We accordingly returned the record to the Immigration Court without further action. Now the respondent has filed a motion to reopen with the Board.

The previous Board order dismissed the respondent's appeal for lack of jurisdiction, because it was untimely filed. When an appeal is dismissed for lack of jurisdiction, the only motion that can be entertained by the Board is a motion to reconsider which challenges the finding that the appeal was untimely. The motion before us is not a motion to reconsider. Therefore, we find that we have no jurisdiction over this motion, as jurisdiction lies with the Immigration Judge. *See Matter of Mladineo*, 14 I&N Dec. 591 (BIA 1974). *See also Matter of Lopez*, Interim Decision 3343 (BIA 1998). Accordingly, the record is returned to the Immigration Court without further Board action.


FOR THE BOARD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA          :

  - v -                                        :

                                              O8 CR 626 (JSR)

JOSE CASTILLO-SOLIS          :

    Defendant.                          :

------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### PRELIMINARY STATEMENT

The defendant, Jose Castillo-Solis, is charged in a one-count Indictment with illegally

reentering the United States subsequent to deportation after conviction of an aggravated felony in

violation of 8 U.S.C. § 1326.  The defense respectfully submits this Memorandum of Law in

support of Mr. Castillo-Solis' Motion to Dismiss the Indictment on the ground that he was

illegally deported after a fundamentally unfair proceeding that deprived him of administrative

and judicial review in violation of the Due Process Clause.

### STATEMENT OF FACTS

Jose Castillo-Solis, a citizen of Honduras, arrived in Miami, Florida in the United States

as a Lawful Permanent Resident on July 15, 1986.  He was thirteen years old.  He lived in the

United States as a lawful permanent resident until July 18, 2002 when he was deported to

Honduras.

Mr. Castillo-Solis was deported because, on or about March 3, 1994, he pled guilty to the

charge of attempted robbery in the first degree in New York State Supreme Court, County of the

1

Bronx. He was sentenced to one year imprisonment but the court reduced his sentence and he was reduced after completing a term of imprisonment of about eight months.

The Immigration and Naturalization Service (although the agency since has changed its name, it will be referred to herein as "the INS") did not initiate deportation proceedings against Mr. Castillo-Solis until 1997.

Between 1994 (when Mr. Castillo-Solis pleaded guilty) and 1997 (when deportation proceedings were initiated against Mr. Castillo-Solis), Congress amended the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., ("INA"), by enacting the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Prior to these amendments, the Attorney General had broad discretion, pursuant to § 212(c) of the INA, to cancel deportation orders for aliens who met certain residence requirements and had not served five years in prison for an aggravated felony. 8 U.S.C. § 1182(c) (repealed 1996). Following the amendments, however, aliens who pleaded guilty to certain enumerated aggravated felonies (including attempted robbery) were ineligible for § 212(c) relief from deportation. AEDPA § 440(d).

At the time of Mr. Castillo-Solis' deportation hearing, in June 1997, the Attorney General took the position that the 1996 amendments applied in all cases where the deportation occurred after their effective date, eliminating 212(c) relief retroactively even where the disqualifying criminal conviction had occurred before the effective date of the new laws. However, in Immigration and Naturalization Service v. St. Cyr, 533 U.S. 289 (2001), the Supreme Court held that this position was incorrect. "We ... hold that § 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those

convictions, would have been eligible for § 212(c) relief at the time of their plea under the law

then in effect." 533 U.S. at 326.

On June 3, 1997 (after the amendments' enactment but before St. Cyr), the INS issued to

defendant a Notice to Appear in Removal Proceedings, alleging that he was deportable on the

basis of his 1994 conviction. Mr. Castillo-Solis had his deportation hearing on June 12, 1998.[1]

At the time of his hearing, Mr. Castillo-Solis had resided in the United States as a lawful

permanent resident for 12 years and his entire family lived in the United States, including his

grandparents, mother, sister, brother, many cousins, and six children. He had no strong ties in

Honduras. He was a candidate for § 212(c) relief.

Nevertheless, at Mr. Castillo-Solis' hearing, Immigration Judge Mitchell Levinsky

incorrectly and repeatedly advised Mr. Castillo-Solis that he was ineligible for § 212(c) relief or

any other relief from removal.[2] At the start of the hearing, Judge Levinsky informed Mr.

Castillo-Solis, who was unrepresented, that he had a right to an attorney, a right to have the case

adjourned if he wished to retain counsel, and the right to appeal. (2:25). Mr. Castillo-Solis

explained that he did not have the money for an attorney and agreed to proceed on his own

behalf. (Id.) During the proceedings, Mr. Castillo-Solis attempted to contest his removability,

explicitly informing the judge that he had six children who were American. (11:11). In

---

[1]    Shortly before his deportation hearing, on or about March 6, 1998, Mr. Castillo-Solis pleaded guilty to another attempted robbery offense and was sentenced to a term of prison between five and ten years. At the time of his hearing, he had served less than a year of that sentence. Mr. Castillo-Solis' 1998 conviction appears not to have been the basis for a deportation order against Mr. Castillo-Solis.

[2]    The government provided an audio recording of Mr. Castillo-Solis' deportation hearing as part of discovery. The following summary and quotations are based on defense counsel's review of the CD. The citations refer to the minute:second marker on the CD at which the reference can be found.

response, the judge stated "that is not my problem," and offered the following two options to Mr. Castillo-Solis: "you can bring them [the children] back to Honduras with you or you can keep them here in the United States." At the end of the proceedings, the Judge acknowledged that "respondent does not wish to be removed from the U.S." but continued "**he is not to submit any application for relief because the Court believes that as a matter of law there is no relief available to him**." (16:50). Judge Levinsky then summarized the 1996 amendments, (17:37), and concluded by stating that "**the Court is not aware of any relief available to this respondent from removal and, therefore, the ... Order [of Deportation] will be entered**." (18:12). The Court reserved Mr. Castillo-Solis' appeal rights and informed him that he had thirty days to appeal the Order. (18:57).

Because Mr. Castillo-Solis was misinformed that he was ineligible for 212(c) relief, he believed that he was not entitled to relief from the Immigration Judge's deportation order and, therefore, allowed thirty days to elapse without filing a Notice of Appeal. Although Mr. Castillo-Solis was unrepresented by counsel and mostly unfamiliar with the complex immigration laws, after his thirty days had run, he nevertheless began to believe that he may have been eligible for 212(c) relief. Accordingly, on or about March 8, 1999, Mr. Castillo-Solis filed a pro se Notice of Appeal to the Board of Immigrations Appeals ("BIA"). By per curiam decision, dated April 5, 1999, the BIA found Mr. Castillo-Solis' Notice untimely and ordered that "[t]he Immigration Judge's decision is accordingly now final, and the record is returned to the Immigration Court without further action." (See Exhibit A to Gatto Affirmation).

Shortly thereafter, the Honorable Jack B. Weinstein issued a decision in Pottinger v. Reno holding that AEDPA's elimination of eligibility for discretionary relief from deportation for

4

lawful permanent residents did not apply retroactively to conduct proceeding AEDPA's

enactment. Mr. Castillo-Solis, accordingly, filed with the BIA - once again, pro se - "a Motion to

Reconsider Late Filed Brief on Appeal Pursuant to New Found Evidence." (See Exhibit B to

Gatto Affirmation). In his brief, Mr. Castillo-Solis wrote:

> The respondent will show that the United States Department of Justice is
> deporting [him] from a crime that occurred before the AEDPA § 440(d) was
> established ....

(Exhibit B). Citing Judge Weinstein's decision in Pottinger v. Reno, 97 CV 3217, Mr. Castillo-

Solis noted:

> United States District Judge Jack B. Weinstein ruled friday, July 30, 1999, that a
> criminal conviction obtained before April 1996, when the law took affect, cannot
> be used by the government to deny equitable hearing to waive deportation of a
> foreign national who is a longtime resident of the United States.

(Exhibit B).

On July 13, 2000, the BIA issued a two-paragraph per curiam decision identifying

defendant's motion as a "motion to reopen", finding that the BIA did not have jurisdiction to

consider such a motion, and returning the record to the Immigration Court. (See Exhibit C to

Gatto Affirmation). Notably, in responding to defendant's motion, the BIA did not deem the

Immigration Court's deportation order final. Indeed, pursuant to 8 C.F.R. § 1003.23(b)(1),

because Mr. Castillo-Solis filed a motion to reopen, the Immigration Court now had jurisdiction

to consider defendant's motion to reopen. It appears, however, that the Immigration Judge never

issued a decision on Mr. Castillo-Solis' motion to reopen his proceedings.

Mr. Castillo-Solis was physically removed from the United States on July 18, 2002.

5

**ARGUMENT**

**BECAUSE MR. CASTILLO-SOLIS WAS NOT LAWFULLY
DEPORTED FROM THE UNITED STATES, THE GOVERNMENT
CANNOT PROSECUTE HIM FOR VIOLATING 18 U.S.C. § 1326,
AND THE INDICTMENT MUST THEREFORE BE DISMISSED**

The Due Process Clause prohibits the government from using a deportation as an element of a criminal prosecution where the deportation proceeding eliminated the right of the alien to obtain judicial review. United States v. Mendoza-Lopez, 481 U.S. 828 (19897). Title 8 U.S.C. § 1326(d), permits a defendant charged with illegal reentry to collaterally challenge the legality of the deportation, where: (1) he has exhausted those administrative remedies that were available to seek relief against the order; (2) defects in the underlying deportation proceeding deprived him of the right of judicial review; and (3) the deportation proceeding was "fundamentally unfair."

Mr. Castillo-Solis' deportation failed to comport with the requirements of due process. First, the hearing was defective and unfair because the immigration judge incorrectly advised him that he was ineligible for relief from deportation - advice that resulted in Mr. Castillo-Solis failing to file a timely appeal. Then, when Mr. Castillo-Solis attempted to reopen his proceedings based on developing case law which confirmed that Mr. Castillo-Solis was eligible for 212(c) relief, the Immigration Court failed to respond to defendant's motion further depriving him of judicial review. Since Mr. Castillo-Solis likely would have received 212(c) relief had the court permitted him to seek it, he was prejudiced by the defect in his deportation hearing.

6

## A.    Exhaustion Requirement

A threshold requirement for relief under 8 U.S.C. § 1326(d) is that the defendant must have exhausted his administrative remedies. Mr. Castillo-Solis satisfied this requirement. He filed a notice of appeal to the BIA, albeit untimely. More significantly, however, he also moved to reopen his deportation hearings. United States v. Perez, 330 F.3d 97, 101 (2d Cir. 2003) (the exhaustion requirement may be satisfied by a defendant who, despite failing to exhaust administrative remedies previously available to him, subsequently filed a motion to reopen his case and, if that motion were denied, appealed that denial); United States v. Copeland, 376 F.3d 61, 67 (2d Cir. 2004) (same and noting that timeliness of defendant's motion to reopen is irrelevant). Here, the Immigration Court appears never to have decided Mr. Castillo-Solis' motion to reopen and, therefore, defendant had no further administrative remedies to pursue with the BIA.

Furthermore, where, as here, a defect in the proceeding is one that improperly deprived the alien of his right to appeal, the exhaustion requirement is excused. United States v. Muro-Inclan, 249 F.3d 1180 (9th Cir. 2001). Thus, if the deportation hearing was unfair, the defendant was deprived of his right to appeal, and was prejudiced by that deprivation, then the collateral challenge must be granted and the indictment must be dismissed. United States v. Mendoza-Lopez, 481 U.S. 828, 840 (1987); United States v. Fares, 978 F.2d 52 (2nd Cir. 1992). Mr. Castillo-Solis did not, at first, appeal his deportation in a timely manner (and therefore arguably waived his right to appeal) because the immigration judge incorrectly advised him that he was ineligible for 212(c) relief from deportation. However, Mr. Castillo-Solis' deportation was based on his conviction for an aggravated felony – attempted robbery – to which he pled guilty in 1994,

7

and for which resulted in a sentence of less than one year. [3]   Under the law in effect at the time

of his plea, he was eligible for 212(c) relief.   He, therefore, also was eligible for § 212(c) relief at

the time of his 1997 deportation hearing and was incorrectly advised to the contrary by the

immigration judge.  Mr. Castillo-Solis waived his timely appeal based on the judge's

misrepresentation of the law and would have appealed had he been correctly advised.  Indeed,

Mr. Castillo-Solis filed his late notice of appeal shortly <u>after</u> he learned that there was support for

the contention that he was eligible for 212(c) relief.  Clearly, defendant only waived his appeal

rights because of the Immigration Court's misinformation and Mr. Castillo-Solis' waiver of a

timely appeal, therefore, can not be "considered and intelligent." <u>See e.g.</u>, <u>Mendoza-Lopez</u>, 481

U.S. at 840; <u>Fares</u> at 56.

---

[3]     In 1996, when Congress passed IIRIRA, it also narrowed the definition of "aggravated
felonies" and, accordingly, narrowed the definition of felons eligible for 212(c).  <u>See</u> §§
321(a)(3) and 321(a)(11).   Before 1996, an alien was ineligible for 212(c) if they were
convicted of a crime of violence which resulted in a prison sentence of five years or more.  After
1996, an alien who was convicted of a crime of violence and served a prison sentence of one
year or more was ineligible.  Furthermore, unlike the repeal of 212(c), § 321(b) of IIRIRA made
the amended definition of aggravated felony retroactive, "appl[ying] regardless of whether the
conviction was entered before, on, or after [September 30, 1996]." However, the change in law
is irrelevant to the motion herein because Mr. Castillo-Solis 1994 conviction resulted in a
sentence of less than one year and, accordingly, at time of his deportation hearing, he was
eligible for 212(c) relief.  <u>Cf.</u>  <u>United States v. Landeros-Arreola</u>, 260 F.3d 407, 410 (5th Cir.
2001) (analyzing sentencing guideline provision which increases a defendant's sentence if he
previously was convicted of an "aggravated felony ... for which the term of imprisonment [is] at
least one year," Fifth Circuit held that guideline provision did not apply to defendant who
originally was sentenced to a four year term of imprisonment but, because the Court reduced the
sentence, did not serve a year in jail); <u>see also</u> <u>Alberto-Gonzalez v. INS</u>, 214 F.3d 906, 909-10
(the phrase "'for which the term of imprisonment [is] at least one year' means the actual
sentence imposed by the judge").  Similarly, at the time of Mr. Castillo-Solis' deportation
hearing, defendant's second conviction also had resulted in less than a year sentence.

**B.    Denial of Judicial Review**

The second requirement of § 1326(d) is that the "deportation proceedings ... improperly deprived the alien of the opportunity for judicial review." 18 U.S.C. § 1326(d)(2).  Here, the Immigration Court's erroneous conclusion that Mr. Castillo-Solis was statutorily ineligible for 212(c) relief and its failure to reopen the proceedings after Mr. Castillo-Solis filed a motion to reopen deprived defendant of the opportunity for judicial review.

The Second Circuit repeatedly has recognized that an erroneous conclusion that an alien was not entitled to 212(c) relief denies him the opportunity for judicial review of his deportation. United States v. Calderon, 391 F.3d 370 (2d Cir 2004); Copeland, 376 F.3d at 61; United States v. Sosa, 387 F. 3d 131, 136 (2d Cir. 2004).  The only exception is where, despite the immigration court's error, the alien would have had a meaningful opportunity to challenge his deportation via habeas corpus. Copeland, 376 F.3d at 68-69.  However, if the alien had "no realistic opportunity for judicial review by way of habeas review," his failure to seek it will not preclude a collateral challenge to the deportation.  Id. at 69.  Like the defendant in Copeland, Mr. Castillo-Solis did not have habeas relief available to him.  As explained above, after the BIA returned Mr. Castillo-Solis' Motion to Reopen to the Immigration Court, the motion languished there without any further action on the part of the Immigration Judge.  Accordingly, the Court's removal order never became final and Mr. Castillo-Solis was unable to exhaust all available administrative remedies because he never had the opportunity to appeal his matter further to the BIA.  An alien cannot seek habeas relief unless a petitioner "has exhausted all administrative remedies available as of right."  Id. at 69 (citing 8 U.S.C. § 1252(d)(1)).

The deportation proceedings against Mr. Castillo-Solis accordingly deprived him of

judicial review.

## C.    Fundamental Unfairness

The final requirement for a successful collateral challenge to a deportation is that the

defendant must show that the deportation as "fundamentally unfair." 18 U.S.C. § 1326 (d)(3).

Under this subsection, the alien must show both a fundamental procedural error and prejudice

resulting from that error. United States v. Perez, 303 F.3d 97, 104 (2d Cir. 2003). Mr. Castillo-

Solis can readily satisfy this standard.

As an initial matter, it is almost always the case that the fundamental procedural error

inquiry in a collateral challenge substantially overlaps the denial of judicial review inquiry. This

is because usually a single error has both denied the alien judicial review and rendered the

proceeding fundamentally unfair. E.g., Perez, 303 F.3d at 103-04 (counsel's deficient

performance both deprived alien of judicial review and rendered proceeding fundamentally

unfair); Calderon, 391 F.3d 370 (immigration judge's incorrect advice to alien that he was

ineligible for 212(c) relief both deprived him of judicial review and rendered proceeding

fundamentally unfair). And, indeed, in Mr. Castillo-Solis' case, the Immigration Judge's

erroneous determination that defendant could not, "as a matter of law," apply for relief from

removal deprived him of the opportunity for judicial review and rendered his deportation

fundamentally unfair. See e.g., Copeland; Sosa; and Calderon.

Furthermore, had Mr. Castillo-Solis been permitted to apply for Section 212(c) relief, he

likely would have received it. He, therefore, also was prejudiced by the defective immigration

hearing and the court's subsequent failure to reopen the proceedings.

Section 212(c) requires that the alien have resided in the United States for seven

10

consecutive years. 8 U.S.C. 1182(c). The alien is ineligible if he has been convicted of certain

aggravated felonies for which he served a sentence of a year[4] or if he has been convicted one or

more aggravated felonies for which he served, in total, at least five years. Id. At the time of Mr.

Castillo-Solis' deportation became final, he met the threshold requirements for 212(c) relief: he

had resided in the United States continuously for twelve years; and he was deported on an

attempted robbery conviction for which resulted in an eight month term of imprisonment.

Furthermore, at the time of his deportation, he had served only about four months on his second

conviction.

Once these requirements are satisfied, the immigration judge considering a § 212(c)

application, employs a balancing test, weighing the factors showing the alien's undesirability as a

permanent resident against the social and humane considerations to "determine whether the

granting of relief is in the best interests of this country." Lovell v. INS, 52 F.3d 458, 461 (2d Cir.

1995).

The adverse factors include: the nature and circumstances of the deportation ground at

issue; additional immigration law violations; the defendant's criminal record and its nature,

seriousness and recency; and other evidence indicative of the defendant's bad character of

undesirability as a permanent resident. Id.

The favorable considerations include: family ties within this country; longtime residence;

hardship to the defendant and defendant's family upon deportation; Armed Forces service;

employment history; community service; property or business ties; evidence showing good

character; and in the case of one convicted of criminal conduct, proof of genuine rehabilitation.

---

[4]      See footnote 3.

11

Id.

Given Mr. Castillo-Solis' unusually strong family ties in this country, lack of any real ties in Honduras, the hardship both he and his family suffered as a result of his deportation, and evidence of his rehabilitation based on his post-arrest cooperation with law enforcement, he was a likely candidate for 212(c) relief.

Mr. Castillo-Solis came to this country at the age of 13 with his mother, brother – then age 15, and sister – then age 7. At the time, his maternal grandparents had been living in the country for a significant period of time and had become United States citizens. They urged all their children – including defendant's mother and defendant's aunt – to bring their families here, where employment opportunities were more bountiful than in Honduras and where they believed it was safer to raise children. Indeed, before relocating her family, defendant's mother, who was raising her children alone, was becoming increasingly concerned about her sons' futures in Honduras where many young men were falling victim to gun violence. She also was struggling to make ends meet.

Mr. Castillo-Solis appeared to adjust well to his new home. He went to local public schools, including P.S. 133 and Samuel Gompers High School in the Bronx. He was surrounded by his loving and close-knit family, all of whom – including defendant – were active in their local church and volunteers with an African youth dance troupe founded by Mr. Castillo-Solis' aunt. Mr. Castillo-Solis also discovered a passion for drawing and spent his free time sketching.

Mr. Castillo-Solis completed the 11th grade of high school and then moved on to vocational training to become an auto mechanic. Following completion of his vocational program until his first arrest (in 1993, at the age of 20), Mr. Castillo-Solis worked as an

apprentice five days a week in an autobody shop and earned extra money doing odd and end jobs in construction and house painting.

By the time Mr. Castillo-Solis was deported, he also had started a family of his own. He fathered six children, assisted in financially supporting all of them, and shared a particularly close relationship with the two who lived geographically closest to him, Samaria Castillo and Tiana Castillo. His deportation was difficult for all of his family but, most especially, for Samaria and Tiana. His deportation also was heartbreaking for the entire Castillo-Solis family who had been very much a part of each other's lives on a daily basis since Mr. Castillo-Solis' mother relocated her family to America in 1986. For Mr. Castillo-Solis, his deportation was devastating. He was removed to Honduras where he had not been in sixteen years, had never been as an adult, and did not have a single family member with whom to reside or to look for support.

These positive factors greatly outweigh the negative factors relating to Mr. Castillo-Solis' criminal record. Indeed, by the time of his deportation, Mr. Castillo-Solis had come to recognize and deeply regret the harm he had caused to himself, others, and his family by the commission of his crimes. Ultimately, he accepted responsibility for all of his actions and, indeed, cooperated with law enforcement by testifying at a co-defendant's trial. If he had not been deported, upon his release from prison, Mr. Castillo-Solis contemplated moving from the Bronx (and its negative influences) to Michigan where extended family ran an apple farm on which he could work while still remaining close to the family he adored.

Surely an immigration judge considering Mr. Castillo-Solis' application for 212(c) relief would have recognized that his long residency in this country, his employment history, his family

13

and community ties, the hardship caused to him and his family by his deportation, and his remorse at the crimes he had committed far outweighed his criminal record, and would have granted him the relief he sought.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court dismiss the Indictment with prejudice because the defendant, Jose Castillo-Solis, was not lawfully deported and the Indictment accordingly fails to charge an offense.

Dated: New York, New York
August 25, 2008

Respectfully submitted,

Federal Defenders of New York

By: _____

JULIA L. GATTO, ESQ.
Attorney for Defendant
**Jose Castillo-Solis**
52 Duane Street - 10th Floor
New York NY 10007
Tel.: (212) 417-8750

14