UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA        :

   - v -                        :
                                          08 CR 626 (JSR)
JOSE CASTILLO-SOLIS             :

   Defendant.                   :

------------------------------------------------------X

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## PRELIMINARY STATEMENT

The defendant, Jose Castillo-Solis, is charged in a one-count Indictment with illegally reentering the United States subsequent to deportation after conviction of an aggravated felony in violation of 8 U.S.C. § 1326. The defense respectfully submits this Memorandum of Law in support of Mr. Castillo-Solis' Motion to Dismiss the Indictment on the ground that he was illegally deported after a fundamentally unfair proceeding that deprived him of administrative and judicial review in violation of the Due Process Clause.

## STATEMENT OF FACTS

Jose Castillo-Solis, a citizen of Honduras, arrived in Miami, Florida in the United States as a Lawful Permanent Resident on July 15, 1986. He was thirteen years old. He lived in the United States as a lawful permanent resident until July 18, 2002 when he was deported to Honduras.

Mr. Castillo-Solis was deported because, on or about March 3, 1994, he pled guilty to the charge of attempted robbery in the first degree in New York State Supreme Court, County of the

1

Bronx. He was sentenced to one year imprisonment but the court reduced his sentence and he was reduced after completing a term of imprisonment of about eight months.

The Immigration and Naturalization Service (although the agency since has changed its name, it will be referred to herein as "the INS") did not initiate deportation proceedings against Mr. Castillo-Solis until 1997.

Between 1994 (when Mr. Castillo-Solis pleaded guilty) and 1997 (when deportation proceedings were initiated against Mr. Castillo-Solis), Congress amended the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., ("INA"), by enacting the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Prior to these amendments, the Attorney General had broad discretion, pursuant to § 212(c) of the INA, to cancel deportation orders for aliens who met certain residence requirements and had not served five years in prison for an aggravated felony. 8 U.S.C. § 1182(c) (repealed 1996). Following the amendments, however, aliens who pleaded guilty to certain enumerated aggravated felonies (including attempted robbery) were ineligible for § 212(c) relief from deportation. AEDPA § 440(d).

At the time of Mr. Castillo-Solis' deportation hearing, in June 1997, the Attorney General took the position that the 1996 amendments applied in all cases where the deportation occurred after their effective date, eliminating 212(c) relief retroactively even where the disqualifying criminal conviction had occurred before the effective date of the new laws. However, in Immigration and Naturalization Service v. St. Cyr, 533 U.S. 289 (2001), the Supreme Court held that this position was incorrect. "We ... hold that § 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those

convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." 533 U.S. at 326.

On June 3, 1997 (after the amendments' enactment but before St. Cyr), the INS issued to defendant a Notice to Appear in Removal Proceedings, alleging that he was deportable on the basis of his 1994 conviction. Mr. Castillo-Solis had his deportation hearing on June 12, 1998.[1]

At the time of his hearing, Mr. Castillo-Solis had resided in the United States as a lawful permanent resident for 12 years and his entire family lived in the United States, including his grandparents, mother, sister, brother, many cousins, and six children. He had no strong ties in Honduras. He was a candidate for § 212(c) relief.

Nevertheless, at Mr. Castillo-Solis' hearing, Immigration Judge Mitchell Levinsky incorrectly and repeatedly advised Mr. Castillo-Solis that he was ineligible for § 212(c) relief or any other relief from removal.[2] At the start of the hearing, Judge Levinsky informed Mr. Castillo-Solis, who was unrepresented, that he had a right to an attorney, a right to have the case adjourned if he wished to retain counsel, and the right to appeal. (2:25). Mr. Castillo-Solis explained that he did not have the money for an attorney and agreed to proceed on his own behalf. (Id.) During the proceedings, Mr. Castillo-Solis attempted to contest his removability, explicitly informing the judge that he had six children who were American. (11:11). In

---

[1] Shortly before his deportation hearing, on or about March 6, 1998, Mr. Castillo-Solis pleaded guilty to another attempted robbery offense and was sentenced to a term of prison between five and ten years. At the time of his hearing, he had served less than a year of that sentence. Mr. Castillo-Solis' 1998 conviction appears not to have been the basis for a deportation order against Mr. Castillo-Solis.

[2] The government provided an audio recording of Mr. Castillo-Solis' deportation hearing as part of discovery. The following summary and quotations are based on defense counsel's review of the CD. The citations refer to the minute:second marker on the CD at which the reference can be found.

3

response, the judge stated "that is not my problem," and offered the following two options to Mr. Castillo-Solis: "you can bring them [the children] back to Honduras with you or you can keep them here in the United States." At the end of the proceedings, the Judge acknowledged that "respondent does not wish to be removed from the U.S." but continued "**he is not to submit any application for relief because the Court believes that as a matter of law there is no relief available to him**." (16:50). Judge Levinsky then summarized the 1996 amendments, (17:37), and concluded by stating that "**the Court is not aware of any relief available to this respondent from removal and, therefore, the ... Order [of Deportation] will be entered.**" (18:12). The Court reserved Mr. Castillo-Solis' appeal rights and informed him that he had thirty days to appeal the Order. (18:57).

Because Mr. Castillo-Solis was misinformed that he was ineligible for 212(c) relief, he believed that he was not entitled to relief from the Immigration Judge's deportation order and, therefore, allowed thirty days to elapse without filing a Notice of Appeal. Although Mr. Castillo-Solis was unrepresented by counsel and mostly unfamiliar with the complex immigration laws, after his thirty days had run, he nevertheless began to believe that he may have been eligible for 212(c) relief. Accordingly, on or about March 8, 1999, Mr. Castillo-Solis filed a pro se Notice of Appeal to the Board of Immigrations Appeals ("BIA"). By per curiam decision, dated April 5, 1999, the BIA found Mr. Castillo-Solis' Notice untimely and ordered that "[t]he Immigration Judge's decision is accordingly now final, and the record is returned to the Immigration Court without further action." (See Exhibit A to Gatto Affirmation).

Shortly thereafter, the Honorable Jack B. Weinstein issued a decision in Pottinger v. Reno holding that AEDPA's elimination of eligibility for discretionary relief from deportation for

4

lawful permanent residents did not apply retroactively to conduct proceeding AEDPA's enactment. Mr. Castillo-Solis, accordingly, filed with the BIA - once again, pro se - "a Motion to Reconsider Late Filed Brief on Appeal Pursuant to New Found Evidence." (See Exhibit B to Gatto Affirmation). In his brief, Mr. Castillo-Solis wrote:

> The respondent will show that the United States Department of Justice is deporting [him] from a crime that occurred before the AEDPA § 440(d) was established ....

(Exhibit B). Citing Judge Weinstein's decision in Pottinger v. Reno, 97 CV 3217, Mr. Castillo-Solis noted:

> United States District Judge Jack B. Weinstein ruled friday, July 30, 1999, that a criminal conviction obtained before April 1996, when the law took affect, cannot be used by the government to deny equitable hearing to waive deportation of a foreign national who is a longtime resident of the United States.

(Exhibit B).

On July 13, 2000, the BIA issued a two-paragraph per curiam decision identifying defendant's motion as a "motion to reopen", finding that the BIA did not have jurisdiction to consider such a motion, and returning the record to the Immigration Court. (See Exhibit C to Gatto Affirmation). Notably, in responding to defendant's motion, the BIA did not deem the Immigration Court's deportation order final. Indeed, pursuant to 8 C.F.R. § 1003.23(b)(1), because Mr. Castillo-Solis filed a motion to reopen, the Immigration Court now had jurisdiction to consider defendant's motion to reopen. It appears, however, that the Immigration Judge never issued a decision on Mr. Castillo-Solis' motion to reopen his proceedings.

Mr. Castillo-Solis was physically removed from the United States on July 18, 2002.

## ARGUMENT

### BECEAUSE MR. CASTILLO-SOLIS WAS NOT LAWFULLY DEPORTED FROM THE UNITED STATES, THE GOVERNMENT CANNOT PROSECUTE HIM FOR VIOLATING 18 U.S.C. § 1326, AND THE INDICTMENT MUST THEREFORE BE DISMISSED

The Due Process Clause prohibits the government from using a deportation as an element of a criminal prosecution where the deportation proceeding eliminated the right of the alien to obtain judicial review. United States v. Mendoza-Lopez, 481 U.S. 828 (19897). Title 8 U.S.C. § 1326(d), permits a defendant charged with illegal reentry to collaterally challenge the legality of the deportation, where: (1) he has exhausted those administrative remedies that were available to seek relief against the order; (2) defects in the underlying deportation proceeding deprived him of the right of judicial review; and (3) the deportation proceeding was "fundamentally unfair."

Mr. Castillo-Solis' deportation failed to comport with the requirements of due process. First, the hearing was defective and unfair because the immigration judge incorrectly advised him that he was ineligible for relief from deportation - advice that resulted in Mr. Castillo-Solis failing to file a timely appeal. Then, when Mr. Castillo-Solis attempted to reopen his proceedings based on developing case law which confirmed that Mr. Castillo-Solis was eligible for 212(c) relief, the Immigration Court failed to respond to defendant's motion further depriving him of judicial review. Since Mr. Castillo-Solis likely would have received 212(c) relief had the court permitted him to seek it, he was prejudiced by the defect in his deportation hearing.

A.  **Exhaustion Requirement**

A threshold requirement for relief under 8 U.S.C. § 1326(d) is that the defendant must have exhausted his administrative remedies. Mr. Castillo-Solis satisfied this requirement. He filed a notice of appeal to the BIA, albeit untimely. More significantly, however, he also moved to reopen his deportation hearings. United States v. Perez, 330 F.3d 97, 101 (2d Cir. 2003) (the exhaustion requirement may be satisfied by a defendant who, despite failing to exhaust administrative remedies previously available to him, subsequently filed a motion to reopen his case and, if that motion were denied, appealed that denial); United States v. Copeland, 376 F.3d 61, 67 (2d Cir. 2004) (same and noting that timeliness of defendant's motion to reopen is irrelevant). Here, the Immigration Court appears never to have decided Mr. Castillo-Solis' motion to reopen and, therefore, defendant had no further administrative remedies to pursue with the BIA.

Furthermore, where, as here, a defect in the proceeding is one that improperly deprived the alien of his right to appeal, the exhaustion requirement is excused. United States v. Muro-Inclan, 249 F.3d 1180 (9th Cir. 2001). Thus, if the deportation hearing was unfair, the defendant was deprived of his right to appeal, and was prejudiced by that deprivation, then the collateral challenge must be granted and the indictment must be dismissed. United States v. Mendoza-Lopez, 481 U.S. 828, 840 (1987); United States v. Fares, 978 F.2d 52 (2nd Cir. 1992). Mr. Castillo-Solis did not, at first, appeal his deportation in a timely manner (and therefore arguably waived his right to appeal) because the immigration judge incorrectly advised him that he was ineligible for 212(c) relief from deportation. However, Mr. Castillo-Solis' deportation was based on his conviction for an aggravated felony – attempted robbery – to which he pled guilty in 1994,

and for which resulted in a sentence of less than one year.[3] Under the law in effect at the time of his plea, he was eligible for 212(c) relief. He, therefore, also was eligible for § 212(c) relief at the time of his 1997 deportation hearing and was incorrectly advised to the contrary by the immigration judge. Mr. Castillo-Solis waived his timely appeal based on the judge's misrepresentation of the law and would have appealed had he been correctly advised. Indeed, Mr. Castillo-Solis filed his late notice of appeal shortly <u>after</u> he learned that there was support for the contention that he was eligible for 212(c) relief. Clearly, defendant only waived his appeal rights because of the Immigration Court's misinformation and Mr. Castillo-Solis' waiver of a timely appeal, therefore, can not be "considered and intelligent." <u>See e.g.</u>, <u>Mendoza-Lopez</u>, 481 U.S. at 840; <u>Fares</u> at 56.

---

[3] In 1996, when Congress passed IIRIRA, it also narrowed the definition of "aggravated felonies" and, accordingly narrowed the definition of felons eligible for 212(c). <u>See</u> §§ 321(a)(3) and 321(a)(11). Before 1996, an alien was ineligible for 212(c) if they were convicted of a crime of violence which resulted in a prison sentence of five years or more. After 1996, an alien who was convicted of a crime of violence and served a prison sentence of one year or more was ineligible. Furthermore, unlike the repeal of 212(c), § 321(b) of IIRIRA made the amended definition of aggravated felony retroactive, "appl[ying] regardless of whether the conviction was entered before, on, or after [September 30, 1996]." However, the change in law is irrelevant to the motion herein because Mr. Castillo-Solis 1994 conviction resulted in a sentence of less than one year and, accordingly, at time of his deportation hearing, he was eligible for 212(c) relief. <u>Cf.</u> <u>United States v. Landeros-Arreola</u>, 260 F.3d 407, 410 (5th Cir. 2001) (analyzing sentencing guideline provision which increases a defendant's sentence if he previously was convicted of an "aggravated felony ... for which the term of imprisonment [is] at least one year," Fifth Circuit held that guideline provision did not apply to defendant who originally was sentenced to a four year term of imprisonment but, because the Court reduced the sentence, did not serve a year in jail); <u>see also</u> <u>Alberto-Gonzalez v. INS</u>, 214 F.3d 906, 909-10 (the phrase "'for which the term of imprisonment [is] at least one year' means the actual sentence imposed by the judge"). Similarly, at the time of Mr. Castillo-Solis' deportation hearing, defendant's second conviction also had resulted in less than a year sentence.

## B. Denial of Judicial Review

The second requirement of § 1326(d) is that the "deportation proceedings ... improperly deprived the alien of the opportunity for judicial review." 18 U.S.C. § 1326(d)(2). Here, the Immigration Court's erroneous conclusion that Mr. Castillo-Solis was statutorily ineligible for 212(c) relief and its failure to reopen the proceedings after Mr. Castillo-Solis filed a motion to reopen deprived defendant of the opportunity for judicial review.

The Second Circuit repeatedly has recognized that an erroneous conclusion that an alien was not entitled to 212(c) relief denies him the opportunity for judicial review of his deportation. United States v. Calderon, 391 F.3d 370 (2d Cir 2004); Copeland, 376 F.3d at 61; United States v. Sosa, 387 F. 3d 131, 136 (2d Cir. 2004). The only exception is where, despite the immigration court's error, the alien would have had a meaningful opportunity to challenge his deportation via habeas corpus. Copeland, 376 F.3d at 68-69. However, if the alien had "no realistic opportunity for judicial review by way of habeas review," his failure to seek it will not preclude a collateral challenge to the deportation. Id. at 69. Like the defendant in Copeland, Mr. Castillo-Solis did not have habeas relief available to him. As explained above, after the BIA returned Mr. Castillo-Solis' Motion to Reopen to the Immigration Court, the motion languished there without any further action on the part of the Immigration Judge. Accordingly, the Court's removal order never became final and Mr. Castillo-Solis was unable to exhaust all available administrative remedies because he never had the opportunity to appeal his matter further to the BIA. An alien cannot seek habeas relief unless a petitioner "has exhausted all administrative remedies available as of right." Id. at 69 (citing 8 U.S.C. § 1252(d)(1)).

The deportation proceedings against Mr. Castillo-Solis accordingly deprived him of

9

judicial review.

C.  **Fundamental Unfairness**

The final requirement for a successful collateral challenge to a deportation is that the defendant must show that the deportation as "fundamentally unfair." 18 U.S.C. § 1326 (d)(3). Under this subsection, the alien must show both a fundamental procedural error and prejudice resulting from that error. United States v. Perez, 303 F.3d 97, 104 (2d Cir. 2003). Mr. Castillo-Solis can readily satisfy this standard.

As an initial matter, it is almost always the case that the fundamental procedural error inquiry in a collateral challenge substantially overlaps the denial of judicial review inquiry. This is because usually a single error has both denied the alien judicial review and rendered the proceeding fundamentally unfair. E.g., Perez, 303 F.3d at 103-04 (counsel's deficient performance both deprived alien of judicial review and rendered proceeding fundamentally unfair); Calderon, 391 F.3d 370 (immigration judge's incorrect advice to alien that he was ineligible for 212(c) relief both deprived him of judicial review and rendered proceeding fundamentally unfair). And, indeed, in Mr. Castillo-Solis' case, the Immigration Judge's erroneous determination that defendant could not, "as a matter of law," apply for relief from removal deprived him of the opportunity for judicial review and rendered his deportation fundamentally unfair. See e.g., Copeland; Sosa; and Calderon.

Furthermore, had Mr. Castillo-Solis been permitted to apply for Section 212(c) relief, he likely would have received it. He, therefore, also was prejudiced by the defective immigration hearing and the court's subsequent failure to reopen the proceedings.

Section 212(c) requires that the alien have resided in the United States for seven

consecutive years. 8 U.S.C. 1182(c). The alien is ineligible if he has been convicted of certain aggravated felonies for which he served a sentence of a year[4] or if he has been convicted one or more aggravated felonies for which he served, in total, at least five years. Id. At the time of Mr. Castillo-Solis' deportation became final, he met the threshold requirements for 212(c) relief: he had resided in the United States continuously for twelve years; and he was deported on an attempted robbery conviction for which resulted in an eight month term of imprisonment. Furthermore, at the time of his deportation, he had served only about four months on his second conviction.

Once these requirements are satisfied, the immigration judge considering a § 212(c) application, employs a balancing test, weighing the factors showing the alien's undesirability as a permanent resident against the social and humane considerations to "determine whether the granting of relief is in the best interests of this country." Lovell v. INS, 52 F.3d 458, 461 (2d Cir. 1995).

The adverse factors include: the nature and circumstances of the deportation ground at issue; additional immigration law violations; the defendant's criminal record and its nature, seriousness and recency; and other evidence indicative of the defendant's bad character of undesirability as a permanent resident. Id.

The favorable considerations include: family ties within this country; longtime residence; hardship to the defendant and defendant's family upon deportation; Armed Forces service; employment history; community service; property or business ties; evidence showing good character; and in the case of one convicted of criminal conduct, proof of genuine rehabilitation.

---

[4] See footnote 3.

<u>Id</u>.

Given Mr. Castillo-Solis' unusually strong family ties in this country, lack of any real ties in Honduras, the hardship both he and his family suffered as a result of his deportation, and evidence of his rehabilitation based on his post-arrest cooperation with law enforcement, he was a likely candidate for 212(c) relief.

Mr. Castillo-Solis came to this country at the age of 13 with his mother, brother – then age 15, and sister – then age 7. At the time, his maternal grandparents had been living in the country for a significant period of time and had become United States citizens. They urged all their children – including defendant's mother and defendant's aunt – to bring their families here, where employment opportunities were more bountiful than in Honduras and where they believed it was safer to raise children. Indeed, before relocating her family, defendant's mother, who was raising her children alone, was becoming increasingly concerned about her sons' futures in Honduras where many young men were falling victim to gun violence. She also was struggling to make ends meet.

Mr. Castillo-Solis appeared to adjust well to his new home. He went to local public schools, including P.S. 133 and Samuel Gompers High School in the Bronx. He was surrounded by his loving and close-knit family, all of whom – including defendant – were active in their local church and volunteers with an African youth dance troupe founded by Mr. Castillo-Solis' aunt. Mr. Castillo-Solis also discovered a passion for drawing and spent his free time sketching.

Mr. Castillo-Solis completed the 11th grade of high school and then moved on to vocational training to become an auto mechanic. Following completion of his vocational program until his first arrest (in 1993, at the age of 20), Mr. Castillo-Solis worked as an

apprentice five days a week in an autobody shop and earned extra money doing odd and end jobs in construction and house painting.

By the time Mr. Castillo-Solis was deported, he also had started a family of his own. He fathered six children, assisted in financially supporting all of them, and shared a particularly close relationship with the two who lived geographically closest to him, Samaria Castillo and Tiana Castillo. His deportation was difficult for all of his family but, most especially, for Samaria and Tiana. His deportation also was heartbreaking for the entire Castillo-Solis family who had been very much a part of each other's lives on a daily basis since Mr. Castillo-Solis' mother relocated her family to America in 1986. For Mr. Castillo-Solis, his deportation was devastating. He was removed to Honduras where he had not been in sixteen years, had never been as an adult, and did not have a single family member with whom to reside or to look for support.

These positive factors greatly outweigh the negative factors relating to Mr. Castillo-Solis' criminal record. Indeed, by the time of his deportation, Mr. Castillo-Solis had come to recognize and deeply regret the harm he had caused to himself, others, and his family by the commission of his crimes. Ultimately, he accepted responsibility for all of his actions and, indeed, cooperated with law enforcement by testifying at a co-defendant's trial. If he had not been deported, upon his release from prison, Mr. Castillo-Solis contemplated moving from the Bronx (and its negative influences) to Michigan where extended family ran an apple farm on which he could work while still remaining close to the family he adored.

Surely an immigration judge considering Mr. Castillo-Solis' application for 212(c) relief would have recognized that his long residency in this country, his employment history, his family

and community ties, the hardship caused to him and his family by his deportation, and his remorse at the crimes he had committed far outweighed his criminal record, and would have granted him the relief he sought.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court dismiss the Indictment with prejudice because the defendant, Jose Castillo-Solis, was not lawfully deported and the Indictment accordingly fails to charge an offense.

Dated: New York, New York
August 25, 2008

Respectfully submitted,

Federal Defenders of New York

By: _____
JULIA L. GATTO, ESQ.
Attorney for Defendant
**Jose Castillo-Solis**
52 Duane Street - 10th Floor
New York NY 10007
Tel.: (212) 417-8750